HON. MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE
and WASTE ACTION PROJECT,

Plaintiffs,

v.

THE BOEING COMPANY,

Defendant.

Case No. 2:18-cv-01209-MJP

CONSENT DECREE

## I. STIPULATIONS

WHEREAS, Plaintiffs Puget Soundkeeper Alliance and Waste Action Project filed a complaint against Defendant the Boeing Company ("Boeing") alleging violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, relating to discharges of stormwater associated with industrial activities and other pollutants from Boeing's facility, known as the Military Delivery Center (MDC), located at 10002 East Marginal Way South, Tukwila, WA (the "Facility") and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

WHEREAS, Puget Soundkeeper Alliance, Waste Action Project and Boeing all agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

CONSENT DECREE - 1
No. 2:18-cv-01209-MJP
1

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

WHEREAS, Puget Soundkeeper Alliance, Waste Action Project and Boeing stipulate to the entry of this Consent Decree without trial or adjudication of any issues of fact or law regarding Plaintiffs' claims and without any stipulations other than those expressly provided in this Consent Decree.

DATED this 25th day of February, 2020

TUPPER MACK WELLS PLLC

By s/James A. Tupper, Jr.
James A. Tupper, Jr., WSBA #16873
Attorneys for Defendant
The Boeing Company

THE BOEING COMPANY
By s/Stanley N. Alpert
Stanley N. Alpert, WSBA #52136
Attorney for Defendant
The Boeing Company

THE BOEING COMPANY
By _____
Stanley N. Alpert, Esq.
Senior Environmental Counsel

SMITH & LOWNEY PLLC

By s/Marc Zemel
Marc Zemel, WSBA #44325
Attorneys for Plaintiffs
Puget Soundkeeper Alliance and Waste Action Project

PUGET SOUNDKEEPER ALLIANCE
By _____
Chris Rilling
Executive Director

WASTE ACTION PROJECT

By _____
Greg Wingard
Executive Director

## I. ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing stipulations of the parties. Having considered the stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the parties and subject matter of this action.

2. Each signatory for the parties certifies for that party that he or she is fully authorized by the party or parties he or she represents to enter into the terms and conditions of

CONSENT DECREE - 2
No. 2:18-cv-01209-MJP
2

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

this Consent Decree and to legally bind the party or parties, their successors in interest and assigns of the parties to it.

3. This Consent Decree applies to and binds the parties and their successors in interest and assigns.

4. This Consent Decree and any injunctive relief ordered within will apply to the operation, oversight, or both by Boeing of the Facility, which is currently subject to National Pollutant Discharge Elimination System Permit No. WAR000150 (the "NPDES permit").

5. This Consent Decree is a full and complete settlement and release of all the claims in the complaint, the sixty-day notice and all other claims known and unknown from operations of the Facility existing as of the date of entry of this Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, and only as to the factual allegations made in the complaint and sixty-day notice letter, other laws arising from operations of the Facility. These claims are released and dismissed with prejudice. Enforcement of this Consent Decree is Puget Soundkeeper Alliance's and Waste Action Project's exclusive remedy for any violation of its terms.

6. This Consent Decree is a settlement of disputed facts and law. This Consent Decree is not an admission or adjudication regarding any specific allegations by Puget Soundkeeper Alliance and Waste Action Project in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of The Boeing Company.

7. The parties agree that the obligations undertaken under Paragraphs 8, 9 and 10 are in full and complete satisfaction of all the claims covered by this decree.

8. Injunctive Relief:

    a. As used in this Consent Decree, the following terms have the following meanings:

CONSENT DECREE - 3
No. 2:18-cv-01209-MJP
3

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

1. "Area 2" refers to the stormwater drainage basin comprising the eastern half of the MDC flight line, as depicted on Attachment A.
2. "Area 3" refers to the stormwater drainage basin at the south end of the Facility, around Buildings 13-01 and 13-02, as depicted on Attachment A.
3. "OWS" refers to "oil water separator" and when combined with an identifying number refers to the corresponding oil water separator at the Facility, as depicted on Attachment A.
4. "MH" refers to "manhole" and when combined with an identifying number refers to the corresponding manhole at the Facility, as depicted on Attachment A.
5. "CB" refers to "catch basin" and when combined with an identifying number refers to the corresponding catch basin at the Facility, as depicted on Attachment A.
6. "CJM" refers to "concrete joint material" and when combined with an identifying number refers to the corresponding CJM location at the Facility, as depicted on Attachment A.
7. "SP" refers to "sample point" and when combined with an identifying number refers to the corresponding sample location at the Facility, as depicted on Attachment A.
8. Stall numbers refer to the corresponding aircraft stall on the Facility flight line, as depicted on Attachment A.
9. "ISGP" refers to the Industrial Stormwater General Permit, issued by the Washington State Department of Ecology.
10. "CSGP" refers to the Construction Stormwater General Permit, issued by the Washington State Department of Ecology.

CONSENT DECREE - 4
No. 2:18-cv-01209-MJP
4

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

b.  Monitoring Locations: Boeing has updated the MDC SWPPP, submitted a change of outfall form, and implemented monitoring at the following locations: the outlet to Oil Water Separator 2 (OWS-2), CB-1.26C (east inlet pipe), MH-3.1M, CB-4.1C, CB-6.2C, Stall 75 and CB-9.1C. Monitoring at OWS-2 and CB-6.2C will be provisional. Boeing may modify the Facility's monitoring points as conditions warrant and consistent with the ISGP, so long as Ecology does not object to the modifications.

c.  Area 2 Treatment System: Boeing submitted a supplemental engineering report and finalized a construction bid for the stormwater collection and treatment system on the east side of the MDC flight line for Area 2. Permitting, construction, and performance evaluation will be completed on the following schedule:

**Table 1 – Area 2 Treatment System Deadlines**

| ACTION | DATE |
|---|---|
| Permitting and Access Agreement<br>- SEPA permitting<br>- CSGP permitting<br>- City of Tukwila Building & Grading permits | June 15, 2020 (Dependent on regulatory approval process, as are the dates that follow below) |
| Construction<br>- Treatment system<br>- Construction in Stalls: 74, 76, 78, 80, 72, 82<br>- KCIA Taxiway<br>- Pumps & Control Systems<br>- Mechanical testing & infrastructure commissioning | Start: June 15, 2020<br>Target Complete: December 21, 2020 |
| Operations and Maintenance Manual | Upon completion of construction & installation |
| Performance Monitoring | Upon installation to June 30, 2021 |
| Performance Monitoring Report | July 1, 2021 |
| Compliance Monitoring Start | July 1, 2021 |

d.  Area 3 Treatment: Boeing installed biochar catch basin inserts within Area 3 of the MDC in June 2018. This corrective action was described in an original engineering

CONSENT DECREE - 5
No. 2:18-cv-01209-MJP

5

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

report and revisions to the report were submitted to Ecology in 2017 and 2018. The biochar catch basin inserts and best management practices implemented in 2019 have not, based on Boeing's sampling, demonstrated uniform and reliable reduction of PCB concentrations in the stormwater discharges from the subject area. Boeing will design modifications to the manhole "MH-3.1M" including diversion and conveyance infrastructure to route the stormwater flow within Area 3 to an engineered media filtration treatment system. Boeing has submitted an engineering report to Ecology for review and will install the treatment system by June 30, 2020. Within thirty (30) days of installation, Boeing will submit an O&M Manual to the Department of Ecology for the Area 3 treatment system. The Area 3 Engineering Report includes the information required in ISGP Condition S8.D.3.a.

Boeing may evaluate and propose to relocate or replace the treatment system after it has been installed by submitting a new engineering report to Ecology without modification or amendment of this Consent Decree.

Boeing will complete the final design and installation of the stormwater collection and treatment system for Area 3 on the following schedule:

**Table 2 – Area 3 Treatment System Deadlines**

| ACTION | DATE |
| --- | --- |
| Permitting, Design, and Construction | June 30, 2020 |
| Operation and Maintenance Manual | July 30, 2020 |
| Compliance Monitoring Start | January 1, 2021 |
| Performance Monitoring Report | January 31, 2021 |

e. Compliance Monitoring and Adaptive Management for Area 2 and Area 3 Treatment Systems:

1. The treatment systems for Area 2 and Area 3 will be subject to start up conditioning and optimization. The compliance monitoring for Area 3 will commence on

CONSENT DECREE - 6
No. 2:18-cv-01209-MJP
6

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

January 1, 2021, and the compliance period for Area 2 will commence on July 1, 2021. Boeing will use Method 8082 for all PCB monitoring.

2. If discharge monitoring from a treatment system exceed a benchmark of 0.030 µg/L total PCBs in any three quarters during a calendar year (multiple sampling events on one quarter may be averaged), Boeing will complete the following with respect to that treatment system. By agreeing to a 0.030 µg/L benchmark, Plaintiffs do not concede, and the consent decree shall not be evidence of, (1) marine water quality criteria applying to the segment of the Duwamish to which the MDC discharges stormwater, or (2) that the *Benchmark* definition in ISGP Appendix 2 applies to this benchmark, or that meeting the 0.030 µg/L benchmark is considered unlikely to cause a water quality violation. By agreeing to 0.030 µg/L benchmark Boeing does not concede, and the consent decree shall not be evidence of same or that discharges above the 0.030 µg/l cause or contribute to violations of applicable water quality standards:

i. Review the SWPPP and ensure that it fully complies with ISGP Condition S3.

ii. Make appropriate revisions to the SWPPP to include additional Treatment BMPs (as defined by the ISGP) with the goal of achieving the 0.030 µg/L total PCBs benchmark value in future discharges. Revisions shall include additional operational and/or structural source control BMPs if necessary, for proper performance and maintenance of Treatment BMPs. A Qualified Industrial Stormwater Professional shall review the revised SWPPP, sign the SWPPP Certification Form, and certify that it is reasonably expected to meet the ISGP benchmarks upon implementation.

iii. Before installing additional treatment BMPs that require the site-specific design or sizing of structures, equipment or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, Boeing shall submit an engineering report to Ecology for review. The engineering report must include the information required in ISGP Condition S8.D.3.a.

CONSENT DECREE - 7
No. 2:18-cv-01209-MJP
7

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

      iv. The engineering report shall be submitted no later than May 15th of the year following the year in which a corrective action was triggered based on the PCB benchmark.

      v. An O&M manual shall be submitted to Ecology no later than 30 days after construction/installation is complete.

      vi. Boeing will summarize the corrective action (planned or taken) in the Facility's ISGP Annual Report (ISGP Condition S9.B). Boeing will include information on how monitoring, assessment or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or if new/additional treatment BMPs will be installed.

      vii. Deadline: Boeing shall sign/certify and fully implement the revised SWPPP according to ISGP Condition S3 and Ecology's current Stormwater Management Manual for Western Washington as soon as possible and no later than September 30th of the following year for additional treatment that does not require an engineering report and, where an engineering report is required, no later than the implementation schedule set forth in an Ecology approval of the engineering report.

      viii. With respect to additional treatment for PCBs under paragraph 8(f)(2)(ii) of this Consent Decree, for good cause, Boeing may request a time extension or waiver of the additional treatment from the Court. For any such request, Boeing must provide a detailed explanation of why it is making the request, including a technical basis. The parties agree to negotiate in good faith for a waiver or extension before applying to the Court. Ecology will retain its jurisdiction over matters it regulates, while the Court will retain jurisdiction over the Consent Decree.

      ix. For the year following the calendar year Boeing triggered a corrective action for total PCBs under this agreement, total PCB benchmark exceedances will not count toward additional corrective actions.

CONSENT DECREE - 8
No. 2:18-cv-01209-MJP
8

f. Additional PCB Abatement in Concrete Joint Material: Boeing will complete additional abatement of Concrete Joint Material (CJM) contaminated with PCBs and yellow striping at Stall 72 as depicted on Map B, attached to this Consent Decree as <u>Attachment B</u>. Boeing certifies that it has contracted to complete this work as soon as weather and operating conditions allow the abatement effort to proceed. Boeing will complete the work by the end of August 2020. In the performance of this work, Boeing will protect receiving water quality, ensure that waste materials do not enter the Facility storm system and ensure that all material is properly handled and disposed.

g. Sampling Strategy to Evaluate PCB Recontamination of Concrete Joint Material.

1. PCBs at the MDC site were historically found to be present in portions of flight line stalls 72, 74, 75, 76, 77, 78 and 80. Concentrations measured prior to abatement of PCB containing Concrete Joint Material (CJM) ranged from non-detect to a high of approximately 75,000 ppm. In the majority of these areas, removal and replacement of CJM has now been completed at least one or more times. Removal involves the saw-cutting of concrete edges, removal of the joint material between the two edges of adjoining concrete panels, and replacement with non-PCB containing polyurethane CJM. Due to the diffusion of PCBs into the adjacent concrete panels, the replacement CJM has been found at times to re-absorb PCBs from adjoining concrete surfaces, leading to detections of PCBs in the replacement CJM.

2. Boeing will re-sample replacement CJM to demonstrate whether PCB concentrations are below one-half of the 50 mg/kg TSCA limit (i.e. 25 mg/kg). Boeing will promptly abate any CJM with PCBs at or above 50 mg/kg. Boeing will continue annual re-sampling of any CJM with PCBs at or above 25 mg/kg, until three sample events indicate that PCB concentrations are not increasing. By agreeing to a 50 mg/kg threshold for PCB abatement, Plaintiffs do not concede, and the consent decree shall not be evidence, that the State of Washington's Model Toxics Control Act does not provide the controlling legal standards for PCB cleanup or that more stringent abatement standards do not apply to the MDC. By agreeing

CONSENT DECREE - 9
No. 2:18-cv-01209-MJP

9

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

to additional CJM abatement Boeing does not concede that CJM abatement is subject to remedial investigation and cleanup action under the Model Toxics Control Act or that Plaintiffs have jurisdiction to enforce the Model Toxics Control Act.

      3. Boeing will collect and analyze at least two samples of CJM from each of stalls 72, 74, 76, 78, and 80. Boeing will collect and analyze one sample from each of stall 75 and 77. The CJM sample locations are shown on Map A, attached to this Consent Decree as <u>Attachment C</u>. The locations were selected based on the higher levels of PCBs from samples previously detected within each stall. The sampling will primarily focus on the eastern flight line stalls. Only one sample was previously found to exceed the TSCA limit on the western flight line stalls (MFC-SP12).

**Table 3 – Previous CJM Samples and Historical PCB Concentration**

| Sampling Area | Previous Sample I.D. | Historical Concentration (mg/kg) |
|---|---|---|
| Stall 72 | CJM94 | 1,700 |
| Stall 72 | CJM15 | 2,600J |
| Stall 74 | CJM132 | 62,000J |
| Stall 74 | CJM128 | 930 |
| Stall 75 | MFC-SP12 | 550 |
| Stall 76 | CJM118 | 75,000J |
| Stall 76 | CJM124 | 60,000 |
| Stall 77 | CJM51 | 0.085J |
| Stall 78 | CJM136 | 501 |
| Stall 78 | CJM133 | 315 |
| Stall 80 | CJM114 | 820 |
| Stall 80 | CJM111 | 780 |
| Stall 80 | CJM109 | 110 |

The areas identified in Table 3 above are the locations with the highest levels and are those that should be examined for potential recontamination. Discreet samples will be collected from each location and analyzed for PCBs Aroclors using Method 8082A with a requested reporting limit of 1 mg/kg (matrix interferences with elastomeric CJM compounds may prohibit achieving the desired reporting limit). Boeing will promptly complete additional PCB abatement of any samples found at or exceeding 50 mg/kg.

CONSENT DECREE - 10
No. 2:18-cv-01209-MJP
10

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

4. Boeing will complete the initial sampling event during the Summer of 2020 (June – Aug). Boeing will complete the second sampling event during the same approximate time during 2021. Boeing will complete any sampling events in subsequent years during the same approximate time

h. Notice to Puget Soundkeeper Alliance and Waste Action Project: For the term of the Consent Decree Boeing will provide Puget Soundkeeper Alliance and Waste Action Project on a quarterly basis and in electronic format copies of all reports submitted to Ecology under the ISGP and all written communications to or from Ecology related to corrective actions, permit modification requests, time extension requests, and compliance or noncompliance with the ISGP. With respect to engineering reports and operation and maintenance manuals related to the treatment systems related to Areas 2 and 3 or any additional corrective actions based on PCB monitoring of the treatment systems, however, Boeing will provide copies to Puget Soundkeeper Alliance and Waste Action Project at the same time the documents are submitted to Ecology for review.

i. Boeing agrees to reimburse Puget Soundkeeper Alliance and Waste Action Project up to $10,000 over the term of the consent decree for review by a *qualified industrial stormwater professional*, as defined in the ISGP, or by attorneys, of engineering reports, operation and maintenance manuals, and compliance monitoring for the Area 2 and Area 3 treatment systems. Not later than 14 (14) days after invoicing for this work, Boeing will pay Puget Soundkeeper Alliance or Waste Action Project the invoiced amount.

9. Payment in Lieu of Penalty:

a. Within fourteen (14) days of entry of this Consent Decree by the Court, Boeing will make a payment in the amount of Seven Hundred and Fifty Thousand Dollars ($750,000) to the King County, Water and Land Resources Division for the Lones Levee Setback and Floodplain Restoration project, as described in <u>Attachment D</u> to this Consent Decree. Checks will be made to the order of and delivered to: King County, Water & Land Resources Division.

CONSENT DECREE - 11
No. 2:18-cv-01209-MJP
11

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Payment will include the following reference in a cover letter or on the check: "Consent Decree, Puget Soundkeeper Alliance and Waste Action Project v. the Boeing Company, Clean Water Act Settlement." Boeing agrees to provide a copy of the check and cover letter, if any, to Plaintiffs.

10. Costs of Litigation:

    a. Within fourteen (14) days of entry of this Consent Decree, Boeing will pay Plaintiffs' reasonable litigation expenses incurred in this matter in the amount of Two Hundred and Twenty Five Thousand Dollars ($225,000). Checks will be made to the order of and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, Attn: Marc Zemel. As a condition precedent of the payment required under this paragraph, Plaintiffs' counsel will provide a sworn affidavit that their contemporaneous time records of fees and costs exceed the $225,000.

11. The payments described under Paragraphs 9 and 10 above shall be in full and complete satisfaction of any claims Puget Soundkeeper Alliance or Waste Action Project have or may have against Boeing, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and cost incurred in this litigation, or for civil penalties, or payments in lieu of civil penalties pursuant to a supplemental environmental project under the CWA.

12. A force majeure event is any event outside the reasonable control of Boeing that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that Boeing timely notifies Plaintiffs of the event; the steps that Boeing will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

Boeing will notify Plaintiffs of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence of the

CONSENT DECREE - 12
No. 2:18-cv-01209-MJP
12

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include

a. Acts of God, war, insurrection, or civil disturbance;
b. Earthquakes, landslides, fire, floods;
c. Actions or inactions of third parties over which defendants have no control;
d. Unusually adverse weather conditions;
e. Restraint by court order or order of public authority;
f. Strikes;
g. Any permit or other approval sought by Boeing from a government authority to implement any of the actions required by this consent decree where such approval is not granted or is delayed, and where Boeing has timely and in good faith sought the permit or approval; and
h. Litigation, arbitration, or mediation that causes delay.

13. This Court retains jurisdiction over this matter. Ecology will retain its jurisdiction over matters it regulates, while the Court will retain jurisdiction over the Consent Decree. While this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. The provisions of CWA section 505(d), 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

CONSENT DECREE - 13
No. 2:18-cv-01209-MJP
13

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

14. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA. Therefore, upon the filing of this Consent Decree by the parties, Plaintiffs will serve copies of it upon the Administration of the U.S. EPA and the Attorney General, with a copy to Boeing.

15. This Consent Decree will take effect upon entry by this Court. It terminates four and one-half (4.5) years after entry, or upon completion of all obligations imposed by the Consent Decree, whichever is later.

16. All parties have participated in drafting this Consent Decree.

17. This Consent Decree may be modified only upon the approval of the Court.

18. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

19. All communications between the parties shall be through legal counsel. Notifications or copies required by this Consent Decree to be made to Plaintiffs shall be delivered electronically to:

Puget Soundkeeper Alliance
Attn: Katelyn Kinn
E-mail: katelyn@pugetsoundkeeper.org

Waste Action Project
Attn: Greg Wingard
E-mail: gwingard@earthlink.net

Notifications required by this Consent Decree to be made to Boeing shall be delivered electronically to:

CONSENT DECREE - 14
No. 2:18-cv-01209-MJP
14

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Stanley N. Alpert
Email: Stanley.n.alpert@boeing.com

John Sherman
Email: johnathan.w.sherman@boeing.com

Lori Blair
Email: lori.n.blair@boeing.com

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day. A notice or other communication will be deemed to have been received: (a) if it is delivered via email.

DATED this 22nd day of April, 2020.

_____
HON. MARSHA J. PECHMAN
UNITED STATES DISTRICT JUDGE

Presented by:

TUPPER MACK WELLS PLLC

By s/James A. Tupper, Jr.
James A. Tupper, Jr., WSBA #16873
Attorneys for Defendant
The Boeing Company

SMITH & LOWNEY PLLC

By s/Marc Zemel
Marc Zemel, WSBA #44325
Attorneys for Plaintiffs Puget Soundkeeper Alliance and Waste Action Project

THE BOEING COMPANY

By s/Stanley N. Alpert
Stanley N. Alpert, WSBA #52136
Attorney for Defendant
The Boeing Company

4823-7915-8196, v. 3

CONSENT DECREE - 15
No. 2:18-cv-01209-MJP
15

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

ATTACHMENT A

G:\Projects\025\221\010\013\Revised Engineering Report\F02DrainageAreasSamplingLocations.mxd 3/1/2018 NAD 1983 StatePlane Washington North FIPS 4601 Feet

**Legend**

- ⊠ Catch Basin
- ⊙ Manhole
- ▣ Oil/Water Separator
- Property Line
- Stormwater Line
- Approximate Stormwater Flow Direction
- Drainage Area
- **MH-3.1M** ISGP Sample Location

0 150 300
Scale in Feet

**Note**

1. Black and white reproduction of this color original may reduce its effectiveness and lead to incorrect interpretation.

Data Sources: Boeing 2016; Google Earth Pro.

Landau Associates

Boeing Military Delivery Center
Tukwila, Washington

**Existing Drainage Areas and Stormwater Sampling Locations**

Figure 2



Figure 1. Concrete Joint Material and Paint Sampling, January 2019. Boeing Military Delivery Center, Tukwila, Washington. Landau Associates. Attachment B.



ATTACHMENT C

G:\Projects\025\221\010\013\Revised Engineering Report\F03CJMSamplingNov17.mxd 8/14/2018

Notes
1. J = The result is an estimated quantity. The associated numerical value is the approximate concentration of the analyte in the sample.
2. J+ = The result is an estimated quantity and the result may be biased high.
3. Black and white reproduction of this color original may reduce its effectiveness and lead to incorrect interpretation.

Legend
- CJM Sample - No PCBs Detected
- CJM Sample - PCBs Detected, Less than 1 mg/kg
- CJM Sample - PCBs Detected, Greater than or Equal to 1 mg/kg, and Less than 50 mg/kg
- CJM Sample - PCBs Detected, Greater than or Equal to 50 mg/kg
- Proposed CJM Sample Locations
- Planned CJM Removal Area
- CJM Areas
- CJM Lines
- Property Line
- New CJM Panels
- CJM Removed - 2005
- CJM Removed - 2006
- CJM Removed - 2014

LANDAU ASSOCIATES

Data Sources: Boeing; Esri World Imagery.

Boeing Military Delivery Center
Tukwila, Washington

**Concrete Joint Material Sample Locations and PCB Results**

Figure 3



ATTACHMENT D

**King County**

**Water and Land Resources Division**
Department of Natural Resources and Parks
King Street Center
201 South Jackson Street, Suite 600
Seattle, WA 98104-3855
**206-477-4800** Fax 206-296-0192
TTY Relay: 711

February 20, 2020

RE: Puget Soundkeeper Alliance and Waste Action Project v. The Boeing Company

To Whom It May Concern:

This letter is intended to provide assurance that I have received the Consent Decree between Puget Soundkeeper Alliance and Waste Action Project v. The Boeing Company and that I am authorized on behalf of King County Department of Natural Resources and Parks, Water and Land Resources Division to make the following binding commitments on behalf of King County:

1. I understand that the Water and Land Resources Division of the King County Department of Natural Resources and Parks will receive funds from The Boeing Company as specified in the Consent Decree.

2. The Water and Land Resources Division will use these funds for the Lones Levee Setback and Floodplain Restoration project as specified in the Consent Decree.

3. King County will not use any money it receives under the Consent Decree for lobbying purposes.

King County is proposing to remove Lones Levee to restore a dynamic, natural floodplain on the Green River to promote recovery of salmon and orca. The Duwamish, where Boeing's facility is located, is a river segment that is part of the Green River. Lones Levee is approximately 30 river-miles upstream from the Boeing facility. This levee currently disconnects the Green river from its historic floodplain, preventing dynamic flow patterns and minimizing habitat-forming processes like channel migration and wood and gravel recruitment. The goal of this project is to address a key limiting factor, critical salmon rearing habitat for Fall Chinook salmon and steelhead in the Middle Green River, by removing constraints to river processes. Funding would support components of construction, including the removal of 1,600 feet of existing levee and the installation of boundary protection measures (setback levee) necessary to protect adjacent agricultural land and private residences. Riparian habitat will be restored, large logs will be placed, and gravel will be dispersed in the floodplain of the river to improve spawning and rearing opportunities for salmon. Once completed, this project will greatly improve the freshwater survival of threatened salmonids by restoring a dynamic mosaic of riverine and floodplain habitats throughout the forested floodplain.

Puget Soundkeeper Alliance and Waste Action Project v. The Boeing Company
February 20, 2020
Page 2

The Water and Land Resources Division of the King County Department of Natural Resources and Parks is a local county government (Tax ID 91-6001327) that works to safeguard King County's water and land resources by providing services that protect public health and safety and yield significant environmental benefits. The Division is committed to sound fiscal management. Please do not hesitate to contact me with questions or for additional information.

Sincerely,

Josh Baldi
Division Director